IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CUSTOM COMPANIES, INC., ) <br> d/b/a CUSTOM CARTAGE, INC., and ) <br> CDN LOGISTICS, INC., ) <br> ) <br> Plaintiffs, ) <br> ) No. 11 C 8367 <br> ) <br> v. ) Judge Ronald A. Guzmán <br> ) <br> THE NORTH RIVER INSURANCE ) <br> COMPANY d/b/a CRUM & FORSTER, ) <br> ) <br> Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This action involves an insurance claim by The Custom Companies, Inc., d/b/a Custom Cartage, Inc.[1] and CDN Logistics (collectively, "CDN"), shipping brokers, for the theft of a shipment of athletic shoes. CDN reimbursed the party that consigned the shoes to it and received partial payment for the loss from the trucking company it had contracted to transport the shoes. In this lawsuit, CDN seeks coverage for its loss through a policy it purchased from North River Insurance Company ("North River"). The parties both move for summary judgment. For the reasons stated herein, CDN's motion is denied and North River's motion is granted in part and denied in part.

---

[1] The defendant contends that The Custom Companies, Inc. d/b/a Custom Cartage, Inc. is not a proper party as it is not the entity that suffered the loss and is not a named insured under the relevant insurance policy. The Court refers to the plaintiffs collectively for purposes of this motion and leaves for a later date resolution of that issue.

**I. Facts**

*Background*

The plaintiffs, collectively referred to as CDN, are Illinois corporations with their principal places of business in Cook County, Illinois. (Pls.' LR 56.1(b)(3)(B) Stmt., Dkt. # 38, ¶ 1.) North River is a New Jersey corporation with its principal place of business in Morristown, New Jersey. (*Id.* ¶ 2.) Venue is proper in this district because a substantial part of the events giving rise to the claim (theft of a shipment of athletic shoes) occurred in the Northern District of Illinois. (*Id.* ¶ 3.) Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over CDN's claims against North River. (*Id.* ¶ 4.)

CDN was a cargo broker, carrier and freight forwarder that contracted with Expeditors International of Washington, Inc. ("Expeditors") to broker a shipment of Nike athletic shoes by truck from Bensenville, Illinois to Junction City, Kansas. (*Id.* ¶ 5.) CDN was a party to a brokerage agreement with the trucker, Quality Freight, LLC ("Quality Freight"), the Contract Carrier Agreement dated on or about June 22, 2010, pursuant to which CDN hired Quality Freight to transport the athletic shoes. (*Id.* ¶¶ 6-7.) The athletic shoes, however, were stolen from a parking facility in Darien, Illinois on or about August 8, 2010. (*Id.* ¶ 8.)

Expeditors reimbursed Nike for its documented loss in the amount of $319,035.56. (*Id.* ¶ 9.) Expeditors then demanded reimbursement from CDN, which settled with Expeditors for $212,432.28. (*Id.* ¶¶ 10, 11.) CDN, in turn, demanded reimbursement from Quality Freight and received $100,000.00 from Quality Freight's insurer, Northland Insurance Company. (*Id.* ¶¶ 12-13.) As a result, CDN's out-of-pocket loss was $112,432.28. (*Id.* ¶ 14.)

*The Policy*

After the theft of the athletic shoes, CDN asserted a coverage claim under a commercial inland marine insurance policy, Policy No. 3217428405, issued by North River ("Policy"). (*Id.* ¶ 15.) The Policy contains a Motor Truck Cargo ("MTC") Liability Coverage Form, which provides coverage for Covered Property, defined as follows:

> Covered Property means lawful goods and merchandise of others that you have accepted for transportation under a bill of lading, tariff, shipping receipt or contract of carriage as a common or contract motor carrier or when you trip lease to another motor carrier. Such property is covered while in due course of transit in your care, custody or control or in the custody of a connecting carrier.

(*Id.* ¶ 25.)

The Policy also contains a Contingent Cargo Liability Endorsement ("CCL Endorsement"), which modifies the MTC Form and adds to the covered property the "property of others" that CDN had "arranged transportation for under a brokerage agreement with an independent 'trucker.'" (*Id.* ¶ 16.) The CCL Endorsement contains the following setoff provision:

> 3. The insurance provided by this endorsement is excess over any other collectible insurance, whether primary, excess or contingent, unless such insurance is specifically written to apply in excess of this policy. Any amount payable under this endorsement shall be reduced by all sums paid by or on behalf of the "trucker".
> * * *
> 6. Additional Definitions
> "Trucker" means any person or organization engaged in the business of transporting property as a common carrier or contract carrier for hire.

(*Id.* ¶ 23.) CDN seeks coverage under both the CCL Endorsement and the MTC Form.

In addition to the CCL Endorsement and the MTC Form, two endorsements are at issue.

3

First, one endorsement to the Policy sets a liability limit applicable to the "Motor Truck Cargo and Contingent Cargo Liability" forms of "$100,000 AS RESPECTS THEFT OF WEARING APPAREL, MANUFACTURED TOBACCO PRODUCTS AND ALCOHOLIC BEVERAGES, OTHER THAN BEER, ALE OR WINE." (*Id.* ¶ 17.)[2] In addition, another page entitled "Endorsement," which states that the "Coverage Part[] Affected" is only the "Motor Truck Cargo Liability Coverage Form," indicates that "Paragraph C.3. of the Motor Truck Liability Coverage Form [limit for theft of wearing apparel] is amended to $100,000." (Def.'s Ex. 16, at 21, Bates NR00020.)

*CDN's Insurance Claim*

In is amended complaint, CDN alleged that it was hired "to broker shipping of a truckload of athletic shoes" and that its claim was made "[p]ursuant to the contingent cargo liability coverage provided by the [Policy.]" (Pls.' Resp. Def's. Stmt. Add. Fact, # 41, ¶ 1.) CDN's brokerage agreement with Quality Freight expressly refers to CDN as a "broker." (*Id.* ¶ 2.) After the theft, CDN's insurance agent, James Gaertner, prepared or had prepared an ACORD Property Loss Notice, which stated that "CDN brokered a load to Quality Freight," and identified CDN's claim as a "contingent cargo loss." (*Id.* ¶ 3.)

On August 18, 2010, Gaertner notified North River of CDN's "contingent cargo claim." (*Id.* ¶ 4.) That same day, Gaertner separately notified North River's producer, Alan Toth, that CDN had "a substantial contingent loss." (*Id.* ¶ 5.) In an October 22, 2010 email to North River, Gaertner asked how the $100,000.00 limit of insurance in the "contingent liability endorsement"

---

[2] This endorsement amends the original Policy language which listed a $10,000.00 coverage limit for the items specified. (Def.'s Ex. 16, at 11, Bates NR00012.)

4

applied to its loss. (*Id.* ¶ 6.) Gaertner followed that communication with a November 9, 2010 email to CDN's current attorneys, Arnstein & Lehr, wherein he explained that North River was declining to pay for its "contingent loss." (*Id.* ¶ 7.)

CDN retained counsel to assist with its claim. (*Id.* ¶ 8.) The Chitowski Law Offices, in its August 30, 2010 demand letter to Quality Freight (and others) asserted: "CDN brokered the delivery of the load of goods in question to Quality Freight . . ." (*Id.* ¶ 9.) CDN's current attorneys, Arnstein & Lehr, stated in its December 27, 2010 letter to North River that "Custom Cartage . . . is a broker for cargo shipped by truck . . . . [and] contracted . . . to broker shipping of a truckload of athletic shoes" and demanded coverage under the "contingent cargo liability" endorsement. (*Id.* ¶ 10.)

CDN's Claims Manager and Federal Rule of Civil Procedure ("Rule") 30(b)(6) designee, Jeffrey Guthman, who handles more than 3,000 claims per year, testified that CDN's claim against North River was made under the CCL Endorsement. (*Id.* ¶ 11.) CDN's internal notes on an August 9, 2010 email from Expeditors inquiring about the loss described itself as a "Broker" and Quality Freight (referred to in the email as "Quality Logistics") as the "Carrier." (*Id.* ¶ 12.)

Both Guthman and Gaertner knew the endorsement capped liability for the theft of wearing apparel at $100,000.00. (Def.'s Ex. 4, Gaertner Dep. at 12:23-13:10; Def.'s Ex. 5, Guthman Dep. at 51:7-9, 62:3-24). At the time the Policy was placed, Gaertner specifically pointed out the $100,000.00 limit of liability for the theft of wearing apparel to CDN's president, Perry Mandera. (Pls.' Resp. Def.'s Stmt. Add. Fact, # 41, ¶ 17.) CDN's brokerage agreement with Expeditors required insurance for motor truck cargo of $100,000.00 per occurrence while CDN's brokerage agreement with Quality Freight required cargo liability insurance of not less

5

than $100,000.00. (Expeditors' Agreement, Pls.' Ex. C at § H; Quality Freight Brokerage Agreement, Def.'s Ex. 7 at 6.)

## II. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248. To succeed on a summary judgment motion, the evidence must be such "that [no] reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In Illinois, the interpretation of an insurance policy is a question of law that is appropriately resolved by summary judgment. *River v. Commercial Life Ins. Co.*, 160 F.3d 1164, 1169 (7th Cir. 1998).

## III. Analysis

### A. Legal Background

"An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). When the terms of an insurance policy are clear, courts should ascertain the intent of the parties solely from the language of the policy. *La Salle Nat'l Trust, N.A. v. ECM Motor Co.*, 76 F.3d 140, 144 (7th Cir. 1996). If the language

6

of the policy is ambiguous, it must be interpreted against the insurer. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001).

B. Are Plaintiffs entitled to coverage?

CDN contends that it is entitled to coverage under both the MTC Form and the CCL Endorsement. North River asserts that CDN has waived its right to rely on the MTC Form but agrees that it is liable under the CCL Endorsement. However, North River contends that CDN's claim pursuant to the CCL Endorsement is subject to a $100,000.00 limitation for "thefts of wearing apparel" which amount, in turn, must be reduced pursuant to the setoff provision by the $100,000.00 that CDN received from Quality Freight. Therefore, North River contends that it is has no obligation to make any payment to CDN pursuant to the Policy.

1. *MTC Form*

As to the coverage claimed by CDN under the MTC Form, North River contends that because CDN alleged in its amended complaint that it sought coverage only under the CCL Endorsement, characterized its loss as one falling under the CCL Endorsement in its communications with North River, and CDN's attorneys represented to those involved in the loss that CDN was seeking coverage under the CCL Endorsement, CDN is now precluded from seeking coverage under the MTC Form.

The argument is unavailing. CDN's reference to the MTC Form is not a new claim, it is an alternative basis for relief under the already-asserted breach of contract claim. The Court recognizes that in another breach of contract case, the Seventh Circuit held that a district court did not err in finding that a plaintiff had waived alternative bases for relief for its breach of contract claim by raising it for the first time in its sur-reply during summary judgment. *Trade*

*Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009). While the circumstances in the *Trade Finance* case may not have lent themselves to allowing the plaintiff to argue an alternative basis of relief, the Court concludes that the circumstances in this case do.

As an initial matter, CDN raised the argument regarding the MTC Form not in a sur-reply in support of its summary judgment brief but in its opening motion. Moreover, sufficient discussion regarding the MTC Form occurred during discovery such that North River should have been put on notice that CDN could be seeking coverage under the MTC Form. In his deposition, Gaertner was asked (it appears by CDN's counsel) whether the stolen property could also fit under the definition of covered property in the MTC Form, and he stated, "yes." (Pls.' Resp. Court's Direct., Dkt. # 44, Ex. A, Gaertner Dep. at 80-82.) Moreover, in response to interrogatories from North River regarding the limit of liability applicable to the loss, CDN referred to the MTC Form and its declarations and endorsement. (*Id.*, Ex. B., Pls.' Supp. Answers, ¶ 14). In addition, several deponents made reference to the MTC Form and its terms during their depositions. For example, Jeffrey Guthman, Custom's claims manager and CDN's Rule 30(b)(6) witness, testified that CDN had arranged to "trip lease" the load of the Nike shoes at issue pursuant to its agreement with Quality Freight. (*Id.*, Ex. B, Guthman Dep. at 12.) In addition, Guthman was asked a question about the applicability of the CCL endorsement to the MTC Form. (*Id.*, Ex. B, Guthman Dep. at 61.)

For its part, North River fails to point to any interrogatory in which it sought to identify the specific bases for CDN's breach of contract claim or any authority that CDN is limited to the insurance provisions it identifies in its communications with the insurer or complaint. Given the numerous references to the MTC Form during discovery, including a specific question by CDN's

8

attorney to Gaertner regarding whether the stolen property could also fit within the coverage provided by the MTC Form, and North River's failure to nail down the specific bases for CDN's claim, the Court, in its discretion, concludes that CDN may seek coverage under the MTC Form.

As noted above, the MTC Form provides coverage for Covered Property defined as:

> . . . lawful goods and merchandise of others
> that you have accepted for transportation under a bill of lading,
> tariff, shipping receipt or contract of carriage as a common or
> contract motor carrier or when you trip lease to another motor
> carrier. Such property is covered while in due course of transit in
> your care, custody or control or in the custody of a connecting
> carrier.

(Pls.' LR 56.1(b)(3)(B) Stmt., Dkt. # 38, ¶ 25.)

North River fails to address the merits of whether coverage exists under the MTC Form. According to CDN, because it trip leased [3] the cargo and maintained control over the goods while in Quality Freight's custody, the loss is covered under the MTC Form or at least a genuine issue of material fact exists as to whether the loss is so covered. (Pls.' Resp. Court's Direct., Dkt. # 44, Ex. B, Guthman Dep. at 12 (testifying that CDN had arranged to "trip lease" the load of the Nike shoes at issue pursuant to its agreement with Quality Freight)); (*id*., Ex. A, Gaertner Dep. at 81 ("[W]hen CDN accepted the low [sic], okay, they still – it was still in a sense in their – within their custody, because they were still controlling the load.").) While North River does not contest CDN's evidence with its own citations to the record, the Court concludes that, given

---

[3] The Illinois Supreme Court describes a "trip lease" as "a common practice in the trucking industry whereby a lessor would lease the vehicle to another company for a single trip to a specified location." *MWM Trucking Co. v. Indus. Comm'n*, 342 N.E.2d 17, 19 (Ill. 1976). *See also* The International Risk Management Institute, http://www.irmi.com/online/insurance-glossary/terms/t/trip-lease.aspx ("a lease of vehicular equipment to a motor carrier (lessee) for a single [trip]") (last visited February 5, 2013).

the lack of definitive evidence by CDN as to whether the load was trip leased and remained in CDN's control and custody or in the control or custody of a connecting carrier, as required for coverage under the MTC Form, a trial is necessary to resolve these genuine issues of material fact.

CDN's and North River's cross-motions for summary judgment as to the applicability of the MTC Form are denied.

2.   *CCL Endorsement*

As already noted, North River acknowledges that it is liable under the CCL Endorsement in the Policy, but states that CDN's claim is subject to the $100,000.00 limitation for "thefts of wearing apparel" which amount, in turn, must be reduced pursuant to the setoff provision by the $100,000.00 that CDN received from Quality Freight.

CDN claims that the CCL Endorsement is void of any reference to a $100,000.00 limitation for theft of wearing apparel. The MTC Form sets a limit of insurance of $10,000.00 for theft of commodities including wearing apparel (Def.'s Ex. 16 at 13, Bates NR 00012), while an endorsement to the MTC Form, effective date of July 1, 2010 (*id*. at 21, Bates NR00020), indicates that the amount for the theft of certain commodities, including wearing apparel, is amended to $100,000.00. According to CDN then, the $100,000.00 limit for theft of wearing apparel applies only to the MTC Form, not the CCL Endorsement. It supports this construction by pointing to the deposition testimony of Michelle Best, North River's claims adjuster and its 30(b)(6) witness, who stated that the Motor Truck Cargo and Contingent Cargo Liability Endorsement "contains the limits of liability relating to the *motor truck liability coverage form*." (Def.'s Ex. 18, Best Dep. at 62:19-63:17) (emphasis added.)

However, as the parties acknowledge and as briefly discussed earlier, two endorsements (other than the CCL Endorsement) are at issue. One, located at NR00018, indicates at the top of the page that it is an "Endorsement" and then states that the "Coverage Parts Affected" are the "Motor Truck Cargo *& Contingent Cargo Liability*." (Def.'s Ex. 16 at 19, Bates NR00018) (emphasis added) ("First Endorsement.") It then lists various coverage limits including "$100,000 as respects theft of wearing apparel," among other things. Two pages later, at NR00020, another page entitled "Endorsement" states under "Coverage Parts Affected" only the "Motor Truck Cargo Liability Coverage Form" and states that "Paragraph C.3. of the Motor Truck Liability Coverage Form [limit for theft of wearing apparel] is amended to $100,000." (Def.'s Ex. 16 at 21, Bates NR00020.) ("Second Endorsement"). Both endorsements are dated July 1, 2010.

It is not clear why the Second Endorsement specifying the change only to the Motor Truck Liability Coverage Form exists separately from the First Endorsement. The existence of the separate Second Endorsement, however, does not eliminate the effect of the First Endorsement, which, by its terms, expressly applies to the Motor Truck Cargo *and* Contingent Cargo Liability forms. *National Cas. Co. v. Jewel's Bus Co.*, --- F. Supp. 2d ----, 2012 WL 3023315, at *2 (N.D. Ill. Jul. 24, 2012) ("If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning") (emphasis, citation and internal quotation marks omitted).

This is true despite Best's statement that the First Endorsement applies to the MTC Form. While Best so stated, she also acknowledged in response to another question that under "Coverage Parts Affected," the First Endorsement states "Motor Truck Cargo & Contingent

11

Cargo Liability." (Def.'s Ex. 18, Best Dep. at 63.) Moreover, Best does not appear to have been specifically asked why she stated that the First Endorsement applied only to the MTC Form when it also indicated it applied to the CCL Endorsement.

CDN's arguments that the $100,000.00 limit specified in the First Endorsement is inapplicable are unpersuasive. CDN first asserts that the MTC Form identifies only one limit: $10,000,000.00 for all covered property. (Def.'s Ex. 16 at 11, Bates NR00010.) While the first page of the MTC Form states that the limit of the Policy is $10,000,000.00 for all Covered Property, the MTC Form later states under a section entitled "Limits of Insurance" that the "most [North River] will pay for 'loss' in any one occurrence: . . . For theft of one or more of the following commodities is $10,000 [subsequently amended to $100,000.00]: a. wearing apparel." (*Id.* at 13, Bates NR00012.) The insurance contract must be read as a whole, *American Zurich Ins. Co. v. Wilcox & Christopoulos, L.L.C.*, --- N.E.2d ----, 2013 WL 212024, at **9-10 (Ill. App. Ct. Jan. 17, 2013), and the Court cannot ignore the specific limitation provided for theft of wearing apparel. Nor does the Court read these provisions as incompatible. Although the Policy's limit for all covered property is $10,000,000.00, it will cover a theft of wearing apparel only up to $10,000.00 (which was subsequently amended to $100,000.00).

CDN also attempts to inject ambiguity in the CCL Endorsement by arguing that the use of the term "brokerage agreement" in Section 2 of the CCL Endorsement could mean CDN's Contract Carrier Agreement with Quality Freight *or* the agreement between Expeditors and CDN. Section 2 states:

> 2. The Limit of Insurance
> The Limit of Insurance provided under this [CCL] endorsement is the lesser of :
> (a) the limits of liability required by the brokerage agreement; or

12

> (b) the amount shown in the Declarations.

(Def.'s Ex. 16 at 26, Bates NR00025.) According to CDN, the brokerage agreements did not contain a limit of $100,000.00; thus, the $100,000.00 limit for theft of wearing apparel cannot apply to the CCL Endorsement. As an initial matter, both agreements between CDN and Expeditors and Quality Freight required $100,000.00 in cargo coverage. (Pl's. Ex. C, Dkt. # 38-3, at 5; Def.'s Ex. 7, Dkt. # 34-7, at 7.) In any event, CDN's interpretation again ignores, without a legal basis, the application of the endorsement limiting liability under the CCL Endorsement for thefts of wearing apparel to $100,000.00.

CDN's assertion that it was not on notice of the limits is a non-starter. Both Gutman and Gaertner testified that they were aware of the $100,000.00 limit on the theft of wearing apparel. (Def.'s Ex. 4, Gaertner Dep. at 12:23-13:10; Def.'s Ex. 5, Guthman Dep. at 51:7-9, 62:3-24.)

CDN claims that even if the Court reads the $100,000.00 coverage limit endorsement to also apply to the CCL Endorsement, which it does, that amount is not subject to the setoff provision in Section 3 of the CCL Endorsement as North River contends. The setoff provision states:

> The insurance provided by this endorsement is excess over any other collectible insurance, whether primary, excess, or contingent, unless such insurance is specifically written to apply in excess of this policy. Any amount payable under the endorsement shall be reduced by all sums paid by or on behalf of the "trucker."

(Def.'s Ex. 16, Dkt. # 34-16, at 26, Bates NR00025.) While CDN focuses on the meaning of the first part of the provision, it completely ignores the second sentence that "[a]ny amount payable under the endorsement shall be reduced by all sums paid by or on behalf of the 'trucker' [Quality Freight]." Even assuming that the CCL Endorsement provides excess coverage as CDN

13

contends, it is excess coverage subject to the setoff in the second sentence based on the plain and ordinary meaning of the section read as a whole.  CDN's assertions of ambiguity are unpersuasive.  Thus, while North River acknowledges that CDN is entitled to $100,000.00 for theft of the athletic shoes under the CCL Endorsement, that amount is subject to a setoff of the $100,000.00 paid by Quality Freight to CDN, which leaves the amount payable under the CCL Endorsement at zero.

## IV. Conclusion

For the reasons stated above, CDN's motion for summary judgment [37-1] is denied and North River's motion for summary judgment [33-1] is granted in part and denied in part.  The only issue left for trial is whether coverage exists under the MTC Form.  The parties shall appear for a status on February 20, 2013, at 9:30 a.m. in order to set a trial date.

**ENTER**:

**Date**: February 5, 2013

_____
**Ronald A. Guzman**
**United States District Judge**